ANTON LAUFER vs. THE BRIDGEPORT TRACTION COMPANY.

Third Judicial District, Bridgeport, October Term, 1896.   ANDREWS, C. J., TORRANCE, FENN, BALDWIN and HAMERSLEY, Js.

The mere demand for the production of books or writings in the possession of the adverse party, does not compel the party calling for them to introduce them in evidence, nor make them evidence for the producing party.   If certain statements only, in the writing demanded, are given in evidence by the party calling for it, the party producing it may then place in evidence all of the writing that is relevant to the statements first offered.

The plaintiff, while driving a wagon along the highway, was run into from the rear by an electric street car and injured.   In an action to recover damages it was *held* that expert testimony to show what would constitute reasonable and proper management of an electric car, was admissible.

The plaintiff claimed that the car was late and was running fast to make up time.   *Held* that evidence that the car was running very rapidly on the same trip before it reached the scene of the accident, was admissible in support of that claim.

A party cannot show that he was not negligent upon one occasion, by proving that he was careful and prudent on other occasions.

Section 13 of Chap. 169 of the Public Acts of 1893, empowers town and city authorities to regulate the speed at which street railway companies may run their cars, but provides that they shall not be authorized or permitted to run above fifteen miles an hour.   *Held* that this provision did not undertake to establish any rate of speed within which electric cars might be run, but merely restricted the local authorities in their regulation of the rate.

An electric street-railway company, in the operation of its cars in the pub-

lic highways, has no right superior to that of any other traveler. The right to use the highway is one common to all travelers, and is to be so exercised by each that the just rights of others are not unreasonably interfered with.

Irrespective of the statutory law of the road, the universal usage of vehicles in the highway to turn to the right, is a proper circumstance to be considered in determining whether the conduct of a party injured by a collision with an electric street car, was that of a man of ordinary prudence.

[Submitted on briefs October 30th, 1896—decided January 14th, 1897.]

ACTION to recover damages for personal injuries alleged to have been caused by the defendant's negligence, brought to the Superior Court in Fairfield County and heard in damages to the court, *George W. Wheeler, J.;* facts found and judgment rendered for the plaintiff for $1,500 damages, and appeal by the defendant for alleged errors in the rulings of the court. *No error.*

The following facts were found by the trial court: —

The defendant operated in the streets of the city of Bridgeport, and over and upon Congress Street draw-bridge, so-called, in said city, extending across the Pequonnock River, and forming a part of said highway at the time of the injury complained of, its double track trolley railway, having equipped its road with electrical appliances and power, by virtue of Chap. 169 of the Public Acts of 1893. Cars on this bridge ran over the north track to the west, and over the south track to the east; for convenience of designation we shall call these tracks respectively the west bound and the east bound tracks. The bridge was constructed of solid abutments, and concreted and level for about 200 feet from the west end of the draw; on either side of these tracks there was space for teams to travel. The draw of said bridge was level and 210 feet in length and 21 feet in width, and planked over its whole surface except where the rails were laid. The road-bed, including the rails, over this bridge, as well as the car in question, were in good condition at the time of the injury. The car-tracks occupied nearly the entire width of the draw, leaving a narrow strip of about 3 feet between the draw-bridge railing on either side of the bridge and the west

bound and east bound tracks. It was impossible for teams to pass on the outside of either of these tracks, or between these tracks, and possible for them to cross this draw only upon one or the other of these tracks. The team travel over this bridge connecting East Bridgeport with the city proper, is very large, larger in fact than over any bridge in the city of Bridgeport. At a point 150 feet from the east end of the draw, which is the east end of the bridge, a highway known as William Street, running north and south, intersects said Congress Street, and the tracks of the defendant are laid on William Street and Congress Street. An electric car is of large weight, and great momentum unless operated at a low rate of speed. This draw-bridge was at the date of the injury an exceedingly dangerous place for the operation of a double track trolley road, and cars should cross said draw at a low rate of speed. There was no rule or regulation of the defendant having any application to the safety of the public in the operation of cars over this draw. No instruction or command was ever given by the defendant to the motorman of the car in question, or to those in charge of cars running over this bridge, relative to the danger of this locality, or the danger to the public in operating cars over this bridge. The operation of the defendant's cars throughout all the streets of the city, was left by the officials of the defendant to the judgment and discretion of the employees in charge of the cars; these employees might run cars at any rate they pleased between the points named in the time-table, except that cars within one mile of the city hall, which includes this draw-bridge, must run at a rate not to exceed 8 miles an hour, and except that the speed of cars was governed by schedule or time-table. There was no ordinance or regulation of the city relative to the speed of cars, so far as appeared in evidence. The employees of the defendant on the car in question had never heard of any rule or regulation of the defendant limiting the speed of the cars in any of the streets of said city or over any of its bridges, except that they must keep the cars running according to the time-table. The said regulation of 8 miles an hour had never been communicated

to or known by the two motormen, two conductors, inspector, and superintendent of the defendant, who testified in this case. No instruction, command or suggestion, had ever been made by the defendant to the employees on the car in question, that the bridge was a dangerous location, requiring extra skill, watchfulness and care on their part while crossing it, in the interest of the safety of the public. The defendant in its operation of its road and of the car in question, over this bridge at the time of the injury complained of, was not in the exercise of ordinary care. At the time of the accident it was broad daylight. The defendant's car was proceeding about 6 o'clock in the afternoon of April 9th, 1895, across the Congress Street bridge on the east bound track. Upon the front platform of this car, besides the motorman, were two other men. The front platform of a trolley car is no place for occupants of the car; the motorman should be alone. Whether these two men interfered with the performance of duty of the motorman did not appear in evidence. Before the car on the day in question reached the level concrete, 200 feet from the draw, it proceeded up the slight incline in the said Congress Street at that point. The car was running over the concrete at the rate of 8 or 10 miles an hour. Between the east end of the concrete and the draw, is a space of 2 or 3 feet over which the trolley wires do not pass, and the trolley pole over this place is held in position by the conductor and jumped across this vacant space. With the exception of either end of the draw, over the whole length of Congress Street including the draw, there was a straight wire. The work at this point overhead, is complicated overhead work. Rule 10 of the company provided : " Motormen will run slowly and with great care under complicated overhead work, holding the car well in hand, and applying that amount of power only as may be necessary for the proper propulsion of the car." This rule was established by the defendant without reference to the safety of passengers or of travelers, but was intended to protect the equipment of the road. It was the duty of the motorman of this car to have run slowly and with great care on this place between the

concrete and the draw, for the purpose heretofore described. A trolley car with proper appliances and properly manned on a dry track, as the track over which the car in question passed was, may, either by shutting off power and applying the brake or reversing the car, when going at the rate of 4 miles an hour, be stopped in 15 feet; when going at the rate of 8 or 10 miles an hour, in less than 75 feet. The momentum of the car was so great from its great speed, that after the power had been shut off and after the collision, it went from 100 to 115 feet from the point where the motorman first saw the plaintiff turning in upon the east bound track, before it could be stopped. At the time when the motorman first saw the plaintiff turning in upon the east bound track, the car was going at the rate of 8 to 10 miles an hour, which was a reckless and dangerous rate of speed at the point in question. Ordinary care in the operation of cars over this draw requires that they shall not run to exceed 4 miles an hour. The car in question was late and the motorman was endeavoring to make up for lost time, in order to make his running time correspond with the schedule time. When the car was from 100 to 150 feet from the draw, the motorman saw the plaintiff Laufer driving over said bridge and nearly to the draw, upon the east bound track—the right hand side of the road—and he rang his gong. Just before driving upon the draw, Laufer turned and looked back, saw the car coming upon the same track he was on and then distant about 150 feet, and he turned off and drove upon the side of this track at sufficient distance from the east bound track to permit a car to pass him. In looking around he did not observe the speed of the approaching car. He had proceeded only a little ways on the draw, when a car on the west bound track rounded the corner of William Street, 150 feet from the east end of the draw and came directly toward him; it ran to a point 40 or 50 feet from the draw-bridge, when it stopped. Laufer saw the west bound car coming towards him 200 to 250 feet distant; he was on the left hand side, and wrong side of the road ; he heard no gong ring and none did ring, and he did not know the east bound car was near him. He knew

the cars ordinarily ran across the draw at a slow rate of speed. He had trotted his own horse across the bridge and was crossing the draw at the rate of about 5 miles an hour, and knew that he was going at a good rate and had gone about 50 feet since he turned around and saw the west bound car. When he saw the west bound car approaching, without looking behind, and apprehending danger of being run down from the west bound car, he turned to get back on the right hand side of the road, which brought him on the east bound track. When he began to turn to get on this track, the east bound car was at least 50 feet behind him. The motorman did not begin to try to stop his car until within 15 or 20 feet of Laufer's wagon. It was then too late. The car struck the wagon in the center of the bridge, and the plaintiff was thrown out and under the fender and carried clear across the bridge, a distance of 110 or 115 feet, where the car was stopped 100 feet from the point where the wagon was struck. There was a rule of the city officials—who it did not appear—known to the employees of the road, but unknown to Laufer, that only one car should be allowed on the draw at a time, and the first car on the bridge should have the right of way, the other car stopping and waiting for it to cross the draw. The said west bound car followed this rule on the night in question. Laufer did not know that it would stop, but believed that it would continue across the bridge and run into or over him if he remained on the left side of the road. The motorman knew that the west bound car was liable to round the William Street corner at any moment, and he ought to have known that unless Laufer knew that the west bound car stopped east of the draw, he would be very apt, on seeing the car, to turn from the wrong side to the right side of the street, which would bring him on the east bound track. The situation was such in this location, and at the time in question, as ought to have raised in the mind of the motorman an apprehension that possibly an accident might result to Laufer, unless he should slow down his car and ring his gong. Laufer began turning in upon the east bound track when he was 50 feet away

from the car; he was then going ⅓ as fast as the approaching car; the motorman saw him at this time. From the point he was seen by the motorman to the point the plaintiff was struck, was 80 feet; the car could with ordinary care have been stopped in about 70 feet. By the exercise of ordinary care the motorman could, after he saw Laufer, have stopped the car before it struck Laufer's wagon. Laufer was not guilty of contributory negligence.

The defendant was guilty of negligence, and the injury resulted from that negligence. After Laufer had placed himself in a dangerous position, the defendant could, by the exercise of ordinary care, have avoided the accident.

The plaintiff's external injuries consisted of bruises on the right wrist, and abrasions on right arm and back of hand, bruises and swelling on the right side and top of head, and upon right hip and muscles of back. He suffered severely from the shock and was confined to his bed about a month, and attended by physicians for about six weeks at his house, and until July at the office of the physician. At the end of that time his external injuries appeared to be cured, but his right hand and forearm appeared to be palsied; and from that time to the present he has suffered with what is called a simple tremor, a constant shaking of the right hand and forearm, which is the result of this accident, and the injury will be a permanent one. The tremor will prevent such occupation as writing, and will gradually cause a deterioration of muscular power. The plaintiff is a farmer, and this tremor will always interfere with the work he has been accustomed to do, and will increase more and more as the years go on, and render it more difficult for him to perform the duties of his occupation.

All other material facts are stated in the opinion.

*Stiles Judson, Jr.*, for the appellant (defendant).

The decision of the trial court, that Laufer was not guilty of contributory negligence, and that the defendant was guilty of negligence, are reviewable conclusions, because they proceed from the distinct application of legal principles and

certain assumed legal standards of duty *that appear of record in this case.* In respect to steam roads, and as we believe, when applied to electric roads, negligence cannot be based upon speed alone. *Dyson* v. *Ry. Co.*, 60 Conn. 266; *Nolan* v. *Ry. Co.*, 53 id. 461. The court denied to the defendant any presumption whatever, growing out of the undisputed fact that the car was being operated within the rate of speed referred to in § 13, Chap. 169 of the Public Acts of 1893. If the motorman had the right to act upon the assumption that Laufer would not cross over again upon the east bound track, then the burden imposed by the court was not justified by the law. The right to indulge in that assumption carries with it the right to maintain the speed of the car, until the danger of Laufer became imminent. *Morrissey* v. *Bridgeport Traction Co.*, 68 Conn. 215; Booth on St. Rys., § 319; *Moore* v. *Ry. Co.*, 108 Pa. St. 353; *Warner* v. *Ry. Co.*, 141 id. 618; *Ry. Co.* v. *Bert*, 69 Ill. 388; *Suydan* v. *Ry. Co.*, 41 Barb. 375; *Everett* v. *Ry. Co.* (Cal. 1896), 43 Pac. Rep. 207; *Fenton* v. *Ry. Co.*, 126 N. Y. 625. That a street railway has a superior right over the portion of the highway occupied by its tracks, is well established, and the relative rights and duties of the railway company and the traveler upon the highway, must always be determined with that legal principle in mind. Booth on St. Rys., § 303; *Carson* v. *Ry. Co.*, 147 Pa. St. 224; Elliott on Roads & Streets, p. 577; 23 Amer. & Eng. Ency. of Law, 900; *O'Neill* v. *Ry. Co.*, 129 N. Y. 125; *Bindbental* v. *Ry. Co.*, 43 Mo. App. 474; *Com.* v. *Temple*, 14 Gray, 69; *Ehrisman* v. *Ry. Co.*, 150 Pa. St. 180; Crosswell on Electricity, § 741; *Fleckenstein* v. *Ry. Co.*, 105 N. Y. 655. It is the duty of a traveler to look for the cars before going over or upon the tracks of an electric railway, and the failure to do so constitutes negligence. 1 Thomp. on Neg., 426, and cases; Booth on St. Rys., §§ 306, 311; Crosswell on Electricity, §§ 742, 755. This doctrine has also been applied to crossing over streets occupied by ordinary vehicles. *Cotten* v. *Wood*, 8 C. B. 568; *Barker* v. *Savage*, 45 N. Y. 195; *Hickerman* v. *Ry. Co.*, 47 Mo. App. 71. The "law of the road" has no application to the meeting or passing of vehicles with

street cars. *Hegan* v. *Ry. Co.*, 15 N. Y. 380; *Spooner* v. *Ry. Co.*, 3 Wash. St. 664. The court erred in admitting the expert testimony, and in allowing the plaintiff to prove that the car was running very rapidly in other parts of the city at considerable distance from the scene of the accident.

*Alfred B. Beers* and *Edward F. Hall*, for the appellee (plaintiff).

The defendant has no ground of complaint because the court refused to allow the entire report to go in evidence. 2 Phil. on Ev. (3 Ed.), p. 222. The other rulings relating to evidence were correct. Section 13 of Chap. 169 of the Public Acts of 1893, neither expressly nor impliedly confers upon street railway companies any right to propel their cars at the rate of 15 miles an hour. In the absence of municipal regulation, no rate of speed is established for the running of such cars; and legal negligence must be determined from the facts and circumstances of each particular case. The law requires of the defendant ordinary care in the operation of its cars over this dangerous portion of its track. The test of ordinary care is what a reasonably prudent man would do under similar circumstances. The legal standard was used and correctly applied to the circumstances. *Farrell* v. *R. R.*, 60 Conn. 239; *Donovan* v. *Hfd. St. Ry. Co.*, 65 id. 214; *Cincinnati St. Ry. Co.* v. *Whitcomb*, 66 Fed. Rep. 915; *Hicks* v. *Citizens Ry. Co.*, 124 Mo. 115; *Hickman* v. *Union Depot Co.*, 47 Mo. App. 68; *Quirk* v. *St. Louis United Elevator Co.*, 126 Mo. 279; *San Antonio St. Ry. Co.* v. *Mechler*, 87 Tex. 628; *Dallas Ry. Co.* v. *Elliott*, 7 Tex. Civil App. 216; *McGee* v. *Consol. St. Ry. Co.*, 102 Mich. 107; Cooley on Torts, 674; *Moore* v. *K. C. & I. Rapid Tran. Ry. Co.*, 126 Mo. 277. Laufer had the same right to use this highway over the draw-bridge that the railway company had. It has no right to the use of the street as a highway superior to that possessed by any other traveler. The traveler must not unnecessarily obstruct the passage of cars. He must turn out and let them pass if he can do so with safety to himself and other travelers on the highway; otherwise he may stay upon the track, and the

car must keep at a safe distance from him until the danger is passed. *Cin. St. R. R. Co.* v. *Whitcomb*, 66 Fed. Rep. 915; *Houston City St. Ry. Co.* v. *Woodlock*, Texas Court of Civil Appeals, Jan. 31st, 1895; *Antonio St. Ry. Co.* v. *Mechler*, 87 Texas, 628; *Lake Roland Elec. Ry. Co.* v. *McKewen*, 80 Md. 593; *Rasher* v. *Railway Co.*, 90 Mich. 415. There was no duty upon the plaintiff to stop, look and listen before crossing the east bound trolley track. *Connelly* v. *Trenton Pas. Ry. Co.*, 56 N. J. L. 701; *Benjamin* v. *Holyoke St. Ry.*, 160 Mass. 3; *Creamer* v. *West End R. R.*, 156 id. 320. The finding that the defendant was negligent and the plaintiff free from negligence, is conclusive here. *Donovan* v. *Hartford St. Ry. Co.*, 65 Conn. 201; *Bunnell* v. *Berlin Iron Bridge Co.*, 66 id. 24.

ANDREWS, C. J. The plaintiff while driving in a one-horse wagon across the Congress Street draw-bridge in the city of Bridgeport, a much traveled highway in that city, was run into by a car of the defendant and seriously injured. He brought this suit to recover for that injury. The defendant suffered a default and there was a hearing in damages. The court found that the defendant was negligent, that the plaintiff was not negligent, and assessed the damages to him at the sum of $1,500. These findings are conclusive, and cannot be disturbed unless some error by the trial court has vitiated them. The defendant has appealed to this court and has assigned very many errors; some in respect to the admission of testimony; some in respect to the findings of negligence by the defendant, and others in respect to the finding that there was no contributory negligence by the plaintiff. The assignments in respect to evidence can be readily disposed of.

The defendant introduced as a witness a Mr. Malone, one of its conductors, who was a passenger on the car that ran into the plaintiff, and a Mr. Stroh, another of its employees. They testified in relation to the collision. On cross-examination it appeared that they had each made a written report of the accident to the defendant, at the time it occurred. The plain-

tiff asked that these reports be produced. The defendant refused to do so, and thereupon the court ordered them to be produced, and they were brought into court. The plaintiff offered in evidence only two statements from the report of Mr. Malone, and did not offer the report of Mr. Stroh at all. The defendant asked that the plaintiff be required to lay in the whole of both reports. The court denied the request. The defendant then claimed the right to lay in the whole of both reports as a part of its own evidence. The court over-ruled the claim, but ruled that the defendant might lay in any part of the report of Mr. Malone in relation to the matters contained in the statements which the plaintiff had put in.

We think these rulings were correct. The mere calling for a paper or writing does not make it obligatory on the party to put it in evidence. 1 Phillips on Ev. (Cowen & Hill's Notes), 441. As to the report made by Mr. Malone, if the whole of it in fact related to the same matter to which the two statements laid in, related, then the whole was ad-missible under the ruling, and the defendant was not harmed by it. In the case of *Kenny* v. *Clarkson*, 1 John. Rep. 386, 394, SPENCER, J., in giving the opinion, says : " It appears to me that the notice to produce a paper, and calling for its inspection, ought to be considered as analogous to a bill for discovery, where most certainly the answer is not evidence but for the adverse party." *Sayer* v. *Kitchen*, 1 Esp. Rep. 209 ; *Kidder* v. *Barr*, 35 N. H. 235.

The plaintiff called as witnesses Mr. Radel, the president of the defendant, and Mr. Kehrer its inspector, each of whom is an expert in the management of an electric railway car, and interrogated them as to the management of the car which ran into the plaintiff. We think this testimony was admis-sible, because it showed to the court what sort of management of an electric car would be reasonable.

A Mrs. Barnes testified, as did also a Mr. Conger, in behalf of the plaintiff, that the car which ran over the plaintiff was moving very rapidly on the same trip at other places than on the draw-bridge. It was the claim of the plaintiff that

this car on this trip was behind schedule time and was trying to make up. This testimony tended to establish that claim.

The testimony of Mr. Victory, that it was the custom and practice to have but one car on the bridge at a time, was properly ruled out. • The defendant could not show that it was not negligent on this occasion, by proving that it was prudent and careful on other occasions. *Morris* v. *East Haven*, 41 Conn. 252; *Russell* v. *Cruttenden*, 53 id. 564. Moreover it was not claimed that such practice was known to the plaintiff, nor was there any offer to show such knowledge.

The ruling upon the inquiry made of Mr. Bradley and the °one of Mr. Phillips, were correct. Even if incorrect, they did the defendant no harm.

The defendant asked the court to hold that the legislature, by § 13 of Chap. 169 of the Public Acts of 1893, had established fifteen miles an hour as the maximum rate of speed for electric cars in any town or city street, and that any rate of speed less than that could not be considered a reckless rate. The court did not so hold. We think the court held rightly. The legislature by the section named did not undertake to fix any rate of speed for electric cars. It conferred power on local authorities to regulate the speed of such cars in their streets, with the restriction that a greater rate than the one named should not be allowed.

So many of the assignments as go to the weight of evidence, this court cannot consider. Whatever view is taken of Chap. 100 of the Public Acts of 1895, it could not affect this case, as all the evidence is not certified up.

Those assignments which refer to the admission of evidence, we have passed on. All the others are intended to be included and are considered, so far as it is necessary to consider them, in the remaining part of this opinion. Of these there are various assignments in respect to the finding of the court that the defendant was negligent. These proceed on the assumption that the court required of the defendant a higher degree of care than the law requires. There are various other assignments in respect to the finding of the court that the plaintiff was not guilty of contributory negli-

Laufer *v.* Bridgeport Traction Co.

gence. These proceed upon the assumption that the court required of the plaintiff a less degree of care than the law requires. If the claim of the defendant in either of these classes of assignments is correct, then there is error in the judgment and it must be set aside. *Morrissey* v. *Bridgeport Traction Co.*, 68 Conn. 215 ; *Nolan* v. *N. Y. etc. R. R. Co.*, 53 id. 461, 472 ; *O'Neil* v. *East Windsor*, 63 id. 150.

In the defendant's argument there is one claimed rule of law underlying it, which runs all along through, and upon the correctness of which its claims upon both these classes of assigned errors must stand, if they can be sustained at all. The court had held that the plaintiff had the same right to drive his wagon in Congress Street that the defendant had to propel its cars there ; that the defendant had no right to the use of the street as a highway superior to that possessed by the plaintiff or any other traveler. To this rule the defendant objected, and in its brief the objection is stated in this way : " We complain that the court in weighing the conflicting evidence in this case, denied to us the benefit that arises out of the proposition that the defendant's right to the use of that portion of the highway occupied by its tracks, was superior to that of Laufer's, at the time he turned over upon the east bound track." All the assignments of error in the two classes which we are now considering, are framed upon the theory that the proposition so stated is correct in the law. If, on the other hand, the rule applied by the court is the right one, then the defendant has nothing in this part of the case of which it can justly complain. In its argument the defendant has sought to enforce the correctness of its proposition in various ways, and to strengthen it by the citation of authorities. In some parts of the argument it is stated as though the defendant, as a corporation, had a superior right in the highway over other travelers. This claim cannot be supported, as the charter of the defendant gives it no such superior rights. Its charter authorizes it to lay its tracks in the streets, and to run its cars over them for the carrying of passengers, but gives no rights in the streets greater than an omnibus company engaged in the same busi-

ness would have. The streets of Bridgeport are public highways. They have been made such by appropriate proceedings. Every traveler has an equal right therein and to every part thereof, with any other traveler. The legislature could not give to the defendant any right superior to that of other travelers in any part of a public highway, even if it should make the attempt, without providing that such superior right should be taken by condemnation and the payment of damages to the landowner. It is sufficient for the present purpose to say that it is not claimed the legislature has attempted to do any such thing.

In other parts of the argument the claim is stated as though a car of the defendant, while passing along a street, had a right upon its tracks superior or paramount (the latter word being used in the sense of the former) to that of other travelers. But if the defendant, as a corporation, has no right in the street superior to that of any other traveler, it is certain that one of its cars has no such superior right. Congress Street in the city of Bridgeport is a public highway. It is such a highway because, and only because, every traveler has an equal right in it with every other traveler. If a car of the defendant has in that street any right superior to the right of the humblest person who has occasion to travel in it, then it is not a highway. A highway is a public way open and free to any one who has occasion to pass along it on foot or with any kind of a vehicle. In every highway the King and his subjects may pass and repass at pleasure. 3 Bacon's Abr., 494; Ch. J. Holt, in *Regina* v. *Saintiff*, 6 Mod. Rep. 255; 4 Viner's Abr., title Chimin Common; 1 Swift's Dig. 106; 3 Kent's Comm., *432; Angell on Highways, §§ 1, 2; *Harding* v. *Medway*, 10 Met. (Mass.), 469; *State* v. *Harden*, 11 S. Car. 360, 368. The late Chief Justice Butler, in a case tried a few years before his death, where a collision in a highway between a heavily loaded team and a light wagon was the subject of inquiry, charged the jury in this way: "In the actual use of a common and public highway every person has an equal right to use it for his own best advantage to suit his own convenience or pleasure, but at all times with a just

regard to the like rights of every other person.   So far as rendering himself liable to damages is concerned, a man may drive fast or slow, with a light wagon or with a loaded team, with a well broken horse or with an ill broken one, along a crowded thoroughfare as well as a vacant street, provided he does not interfere with the just rights of any other person. If a man wishes to drive fast he must do so with respect to the rights of those who drive slow.   If he desires to drive slow he must do so with respect to those who desire to drive fast.   The loaded team and the light wagon must each pay a due regard to the rights of the other.   If one drives in a crowded street he must exercise reasonable care not to endanger other travelers.   If he drives an ill broken horse he must keep it so well in hand as not to expose others to unreasonable hazard."

This is an accurate statement of the law, when applied to the different forms which travel in a highway may take.   At that time electric street cars were not known.   But the rule so given has only to be extended a little to include such cars. They have a common right in the highway with every other traveler, and they must be so managed as not to interfere unreasonably with the like rights of others.   Every person in the use of a highway is bound to use it with reasonable care.   A traveler and a railroad company, when using a public highway in common, must each look out for the presence of the other; the one to avoid being injured the other to avoid inflicting injury.   *Hanlon* v. *Mo. Pac. Ry. Co.*, 104 Mo. 382.   The strongest case cited by the defendant on this part of its argument, is *Ehrisman* v. *Harrisburg Ry. Co.*, 150 Pa. St. 180, where it is said that the electric car in the street has a superior right over that of the traveling public.   But in what the superior right consists, is explained in another part of the opinion, *i. e.*, that it is the duty of a foot passenger, or of one using a horse and wagon, to afford the car an undisturbed passage along its track; that is to say, that the car should be allowed the preference in passing along on its track, over other travelers.   This duty is no more then the application of the rule of reasonable care.   In the exercise

of reasonable care it would be the duty of a foot passenger or of the light wagon, to turn out of the way of the car with all reasonable quickness, so that the car would have an unobstructed passage. The car from its weight, size and the character of the track on which it runs, cannot turn out, and so reasonable care requires the traveler, who can readily turn out, to do so, and that the car, which cannot turn out, shall be so managed as to afford such traveler a reasonable opportunity for that purpose. An electric car has no paramount right in the street, if "paramount" means that it has a greater right than others who are in the street. "Whenever a wagon or other vehicle is on the track in advance of a car, it is bound to get out of the way, and not obstruct the passage of the car." *Cincinnati St. Ry. Co.* v. *Whitcomb*, 66 Fed. Rep. 915, 920. "The public have the right to use these tracks (the street railway track) in common with the railway companies, and . . . it is the duty of passenger railway companies to exercise such watchful care as will prevent accidents or injuries to persons who, without negligence upon their own part, may not at the moment be able to get out of the way of a passing car." *Gilmore* v. *Federal St., etc., Ry. Co.*, 153 Pa. St. 31, 33. "The citizen has the same privilege to use the street for travel that the street railway company has for propelling its cars thereon; and the railway company has, apart from its franchise to lay its rails, no right to the use of the street as a highway superior in any degree to that possessed by the humblest individual. The franchise to lay its rails upon the bed of a public street gives to the company no right to the exclusive use of that street, and in no respect exempts it from an imperative obligation to exercise due and proper care to avoid injuring persons who have an equal right to use the same thoroughfare. It is bound to take notice of, recognize and respect, the rights of every pedestrian or other traveler; and if by adopting a motive power which has increased the speed of its cars, it has thereby increased, as common observation demonstrates, the risks and hazards of accident to others, it must, as a reciprocal duty, enlarge to a commensurate extent the degree of vigilance and

Laufer v. Bridgeport Traction Co.

care necessary to avoid injuries which its own appliances have made more imminent." *Cooke* v. *Baltimore Traction Co.*, 80 Md. 551, 554. "The right of the railway in the street is only an easement to use the highway in common with the public. It has no exclusive right of travel upon its track, and it is bound to use the same care in preventing a collision as is the driver of a wagon or other vehicle." *Rascher* v. *East Detroit etc., Ry.*, 90 Mich. 413. "Although, as has been seen, the public have a right to use the whole of the street for travel, and the fact that a portion of it is occupied by the tracks of a street railway company does not deprive them of this right, and they can exercise it in common with the street railways, yet there is this exception, that as the street railway car cannot leave its track to turn out, it has a paramount right to use that portion of the streets covered by its tracks, but only in so far as that it is the duty of the other teams or travelers to turn out in reasonable time to allow the electric car to pass and avoid accident. The motorman of a car, however, if he sees that the traveler is not turning out, must on his part, do what he can in the way of stopping the car to avoid collision." Croswell on Electricity, § 741 ; *McGee* v. *Ry. Co.*, 102 Mich. 107, 112 ; *Montgomery* v. *Lansing, etc., Ry. Co.*, 103 id. 46 ; Beach on Cont. Neg., § 89 ; *Adolph* v. *R. R. Co.*, 65 N. Y. 554 ; *Barker* v. *Savage*, 45 id. 191 ; *Belton* v. *Baxter*, 54 id. 245 ; *Quinn* v. *R. R. Co.*, 134 id. 611 ; *Carr* v. *West End St. Ry.*, 163 Mass. 360 ; *R. R. Co.* v. *Hanlon*, 53 Ala. 70, 81 ; *Shea* v. *R. R. Co.*, 44 Cal. 414, 428.

We think the word "superior," or "paramount," when used in the cases cited by the defendant as descriptive of the rights which an electric car has in a street, means no more than is said in the quotation from Croswell on Electricity ; that is, that the right which such a car has in a street is only that other travelers shall turn off from its track in reasonable time to allow it to pass, but that the car itself must be so managed as not to do any unreasonable injury to other travelers, and must be stopped if it appears that the other traveler is not turning out ; and then the difference between those cases and the cases cited by the plaintiff, is in the form of

expression and not of real meaning. All the cases then mean the same thing; that is, that the right which an electric car has in a highway is not in its nature higher than the right of other travelers, but is a common right with the others, in the exercise of which the electric car and the other traveler shall so conduct as not to interfere unreasonably with the just rights of each. CH. J. BUTLER, in the passage above quoted, said that in the exercise of their common right in a highway, " the loaded team and the light wagon must each pay a due regard to the rights of the other." So the electric car and the other traveler must each pay a due regard to the rights of the other in the exercise of their common right to use the highway.

We are very clear that the defendant's argument in this behalf cannot be sustained; and that the court committed no error in holding that the right of the defendant in Congress Street at the time of the accident was, in contemplation of the law, no greater than the right of the plaintiff.

The trial judge in his memorandum of decision, which is also made a part of the finding, sets forth his conclusions in this way: " Since we are to apply to the circumstances existing when Laufer began to turn in upon the east bound track, the test of whether his conduct was that of a reasonably prudent man, we ask first, whether the apparent danger which Laufer believed to be imminent and present, and the belief in which caused him to turn upon the east bound track, ought to be taken into consideration. Unquestionably the standard of conduct by which he is to be governed is met by placing a reasonably prudent man in Laufer's place, confronted with the same situation he was, and then determining whether his conduct would coincide with that of Laufer. In the case of *Connelly* v. *Trenton Pass. Ry. Co.*, 56 N. J. L. 701, 704, the court, speaking of the conduct of a traveler in crossing an electric railway track, said: ' If other vehicles threaten his safety, or if his attention is engrossed or distracted by the apparent imminence of danger from other sources, he must act with ordinary prudence with reference . . . to the group of circumstances that makes up

the situation by which he is confronted. How a prudent man would act in the face of concurrent and distracting dangers must, in the nature of things, be a question of fact to be passed upon by the jury, and not a question of law upon which the court may order a nonsuit or direct a verdict.' In the case before us the prudent man is confronted by the fact that he is on the wrong side of the street, on the track of the west bound car which was approaching him and about 200 or 250 feet away. He knows that the east bound car is approaching behind him, and that it is so far away that if it goes at its ordinary rate of speed he can safely cross to the right side of the street. He had a right to expect that the car would not be run at a dangerous rate of speed over the draw. *Creamer* v. *West End St. Ry. Co.*, 156 Mass. 320. He hears no gong rung by the east bound car; he does not know that the west bound car will stop at the draw, but believes that it is going to cross the draw. Under such circumstances would not the average man of prudence be reasonably apprehensive of danger from the west bound car, and yield to his first impulse to get out of the way of that approaching car; and would he not be justified upon these facts in concluding that his only place of safety was on the east bound track? We think that a reasonably prudent man would, in the hurry and fright of the moment, have done the very thing that Laufer did, and we cannot hold him guilty of contributory negligence when we think he acted, under the circumstances, as a reasonably prudent man might have acted."

· In every case where the inquiry is whether or not a party has acted with due care, the trier must apply the standard of the ordinarily prudent man. *Farrell* v. *Waterbury H. R. R. Co.*, 60 Conn. 239. What would a man of ordinary prudence have done situated as this party was? And in answering that question it is the duty of the trier to take into consideration every known circumstance which might rightfully or reasonably have influenced his conduct in that situation.

The defendant insists that in applying the standard of the prudent man to the conduct of the plaintiff, at the time and

as set forth in the above citation, the trial court required of him a less degree of care than the law requires. One specification claimed to show this, calls for notice. The court says that "Laufer was on the wrong side of the road." The defendant argues that there could be no wrong side of the road as respects an electric car, and that the court, in taking that idea into consideration, gave the plaintiff the benefit of an exculpatory circumstance to which he was not entitled; that the "law of the road" has no application to the meeting or passing of vehicles and street cars. Whether or not this last claim is correct or not, we do not now consider. There is, however, a law of the road, a right side and a wrong side of the road, as to all private vehicles, established by universal usage. It is altogether likely that Laufer knew nothing of the law of the road as found in the statutes or in the decisions of the courts. He did know of the universal usage of all wagons to turn to the right. He was in a wagon. There was a wrong side and a right side of the road as to him. And in searching for the influences which might reasonably have affected his conduct at that time, this usage seems a very probable one. He did not know that the west bound car was going to stop. As affecting his conduct that car was not going to stop at all. He had no time for deliberation. He was compelled to act at once or abide the consequences of a serious and perhaps fatal collision. It would seem unreasonable to hold that Laufer should, under such circumstances, remember and act upon any distinction in this respect between an ordinary wagon and a street car. But the whole discussion on this part is made unnecessary by the further fact stated in another part of the finding, that the draw-bridge was so narrow that Laufer could not possibly have turned to the left. His only way to escape the collision was to turn to the right, as he did.

There is no error.

In this opinion the other judges concurred, except BALDWIN, J.; who dissented.