BORDEN'S CONDENSED MILK CO. v. MOSBY.

(Circuit Court of Appeals, Second Circuit.   February 7, 1918.)

No. 106.

1. MUNICIPAL CORPORATIONS ⬤⟹705(4)—LAW OF THE ROAD—OVERTAKING AND PASSING.

Under Highway Law N. Y. (Consol. Laws, c. 25) § 332, which provides that overtaking vehicles shall pass to the left and those overtaken shall turn to the right, if requested, the driver of an overtaken vehicle, who is on the left side of the road, is required to exercise greater care than if he was on the other side, and if an accident occurs the presumption is against him, especially if it is after dark.

2. ACTION ⬤⟹38(3)—CAUSES OF ACTION—INJURY TO PERSON AND PROPERTY.

An injury to the person and one to property, though resulting from the same tortious act, constitute different causes of action.

⬤⟹For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

In Error to the District Court of the United States for the Eastern District of New York.·

Action at law by Joseph Mosby against Borden's Condensed Milk Company. Judgment for plaintiff, and defendant brings error. Reversed conditionally.

The plaintiff resides in Long Island City, in the state of New York. The defendant is a corporation organized and existing under the laws of the state of New Jersey.

The action is brought to recover damages for injuries resulting from a collision between a Ford automobile, driven by plaintiff, but which he did not own, and a heavy milk truck drawn by horses operated and controlled by defendant's employé. The collision occurred on December 22, 1916, at about 2 o'clock in the morning, and it is alleged to have been due solely to the negligence of defendant's employés.

Two causes of action are stated. The first is for injuries to the plaintiff's person, for which damages in the sum of $5,000 are asked. The second is for injuries to the automobile, and which, although he did not own the car, the plaintiff caused to be repaired, and for which damages in the sum of $50 are asked.

The jury returned a verdict in favor of plaintiff in the sum of $400, and judgment was rendered for $455.95; costs having been taxed in the amount of $55.95.

Thomas M. Rowlette, of New York City, for plaintiff in error.

William H. Siebrecht, Jr., of Long Island City, N. Y. (William F. O'Connor, of Long Island City, of counsel), for defendant in error.

Before ROGERS and HOUGH, Circuit Judges, and LEARNED HAND, District Judge.

ROGERS, Circuit Judge (after stating the facts as above). This collision was not between vehicles approaching each other from opposite directions, but between a small automobile, which overtook and tried to pass a large truck drawn by two horses and heavily loaded with milk, together with a few cases of eggs and boxes of butter. At the point where the collision occurred there were two trolley tracks on the avenue. The automobile was on the right-hand track in the direction in which it was going, and the truck was on the left-hand track in the direction in which it was going, when the plaintiff discovered it. When the automobile was within 150 feet of the truck and running about 10 or 12 miles an hour, the plaintiff sounded his horn to pass; but the driver of the truck, according to plaintiff's testimony, did not appear to move either way in the road until the automobile got abreast of him, when he pulled his horses from the left track, upon which he was, to the right track, upon which the automobile was going, with the result that the car struck defendant's right front wheel. The driver of the truck admits that he swung over to the right track, but denies that the car struck his wheel. He insists that it hit his hollow iron whiffletree and broke it. His testimony is that the car did not hit his horses, and that it traveled about 45 feet further ahead in front of the truck and horses, and then came to a full stop and turned three-quarters around. The

following is an extract from his testimony on the direct examination:

"Q. What did you do when you went to turn over into the outbound track? A. Naturally I looked around to see if there was anything behind me. Q. Did you see anything? A. I did not. * * *"

And the following is from his cross-examination:

"Q. Had you turned around before the accident? A. Yes. Q. You saw the automobile coming? A. I did not see the automobile coming. Q. What did you see when you turned around? A. When I turned around I saw nothing; it was a plain road. Q. There was no automobile in sight? A. Nothing at all. Q. How long before the accident did you look around? A. I can't say how long it was. Q. Was it a second, or a minute, or ten minutes? A. I can't say. Q. You don't know? A. I can't say. Q. You don't know whether it was 15 minutes then? A. I don't know. Q. You had turned around before the accident? A. Yes; I had turned around before the accident. Q. Just before the accident? A. Yes; before the accident. Q. How far had you gone in that time, a block or a few feet? A. I should say, I should imagine, about 4 or 5 feet."

The space between the extreme outside rails of the two tracks is paved with Belgian blocks, and on each side is a strip of asphalt, which on the morning in question was slippery. The two parties wanted to keep off the asphalt and on the tracks. That the driver of the truck was on the wrong side of the road when it swerved is admitted.

[1] In England the rule is that drivers of vehicles, approaching one another from opposite directions, shall each keep to the left. In the United States the rule is that each driver shall keep to the right, and when two vehicles are moving in the same direction, and the driver of the one in the rear desires to pass the one in front, he shall pass to the left of the vehicle in front. In Laufer v. Bridgeport Traction Co., 68 Conn. 475, 494, 37 Atl. 379, 383 (37 L. R. A. 533), the court said:

"There is, however, a law of the road, a right side and a wrong side of the road, as to all private vehicles established by universal usage."

And the court goes on to refer to "the universal usage of all wagons to turn to the right." Whether there is a common-law rule of the road in this country we need not inquire, for in most states, if not in all, the matter is regulated by statute. And the New York statute declares:

1. That whenever any persons traveling with any carriages meet on any highway they shall seasonably turn to the right of the center of the road.

2. That any carriage overtaking another shall pass on the left side of the overtaken carriage. And when requested to do so the driver of the overtaken carriage shall as soon as practicable turn to the right so as to allow the overtaking carriage free passage of his left.

2 Birdseye's Cumming & Gilbert Consolidated Laws of N. Y. Ann. p. 2349, § 332.

In Peltier v. Bradley Dann & Carrington Co., 67 Conn. 42, 48, 34 Atl. 712, 32 L. R. A. 651, the Connecticut court declared that the statutory rule as to the law of the road is limited to vehicles for the conveyance of passengers, and has no application to the driver of a truck for the conveyance of goods. But in that state the statute pro-

vided that "when the drivers of any vehicles for the conveyance of persons shall meet each other," etc. In this respect that statute differs from the New York statute. The latter defines the term "carriage" to include stagecoaches, wagons, carts, sleighs, sleds, automobiles, or motor vehicles, and every other carriage or vehicle used for the transportation of persons and goods, or either of them, and tricycles, bicycles, and all other vehicles propelled by manumotive or pedomotive power, or by electricity, steam, gasoline or other source of energy." 2 Birdseye's Cumming & Gilbert's Consolidated Laws of New York, p. 2346, § 326. So that the fact is quite immaterial that the driver of the truck was not using it for the transportation of persons.     \

In taking the wrong side of the road the driver assumed the risk of his experiment, and it was for him to use greater care than would have been required of him if he had kept on the right side. Where a collision occurs in such circumstances, the presumption is against him, and especially when the collision takes place in the dark. Angell v. Lewis, 20 R. I. 391, 393, 39 Atl. 521, 78 Am. St. Rep. 881; Shearman & Redfield on Neg. (6th Ed.) vol. 2, § 377, and volume 3, § 651. And persons who pass him have a right to presume that he will comply with the law of the road, and that no greater caution or skill will be required on their part than would be necessary if he were on his own side of the road. Wood v. Luscomb, 23 Wis. 287.

In Pluckwell v. Wilson, 5 Car. & Payne, 375, Mr. Justice Alderson charged the jury that a person driving a carriage is not bound to keep on the regular side of the road; but, if he does not, he must use more care and keep a better lookout to avoid collision than would be necessary if he were on the proper part of the road. In Adolph v. Central Park, etc., R. Co., 76 N. Y. 530, in an opinion written by Judge Folger, it was laid down that a traveler upon a street or highway is not bound to give way for another, traveling in the same direction, who desires to go by him, if there be room on either hand for the other to pass without way being given; that he is only bound to yield the way enough for one behind him to pass, when it is practicable and he is requested so to do, and when, by keeping in his place, he will prevent the one desiring to drive faster from going by; that he is not bound, therefore, to look or to listen for the coming of another, so as to make clear the way for him. That case is without application to the facts of this case. The driver of the truck did not cause the collision by keeping his place and direction, but by turning out of his course, if the plaintiff is believed, and going directly in front of the latter.

The trial judge properly instructed the jury that the burden was on the plaintiff to prove by a preponderance of testimony that the injury was due to the negligence of the defendant as to some duty which the defendant owed to the plaintiff at the time, and also that the accident did not occur through any fault of the latter. The question of the negligence was a pure question of fact, on which the verdict of the jury is conclusive.

In the argument in this court the defendant complains that the trial court committed reversible error in admitting testimony of a con-

versation which its employé is alleged to have had some 10 minutes after the happening of the accident. Defendant claims that this conversation cannot properly be regarded as any part of the res gestæ and that its admission was extremely injurious. This court cannot consider the error alleged. It is not included in the assignment of errors, and is therefore waived.

[2] The plaintiff's complaint stated two causes of action; one for the injury to his person, and the other for the injury to the automobile. The court was asked to dismiss the second cause of action on the ground that it did not state facts sufficient to constitute a cause of action; the reason no doubt being that the plaintiff had not alleged ownership. The motion to dismiss the second cause of action was denied on the ground that the right to recover damages for the injury to the automobile did not constitute a separate cause of action, and that recovery for that injury might be had under the first cause of action. This was erroneous. The injury to the person and one to property, though resulting from the same tortious act, constitute different causes of action. See Reilly v. Asphalt Paving Co., 170 N. Y. 40, 62 N. E. 772, 57 L. R. A. 176, 88 Am. St. Rep. 636.

The amount of damage which the plaintiff claimed for the injury to the automobile was $50. The judgment is reversed, unless the plaintiff consents to deduct the sum of $50 from his judgment, in which case the judgment is affirmed.

It is so ordered.