City of New Haven et al. *v.* The United
Illuminating Company, Inc., et al.

House, C. J., Cotter, Loiselle, MacDonald and Longo, Js.

Argued March 11—decision released May 20, 1975

*Henry L. Fisher,* with whom was *Alfred J. Onorato,* and with whom, on the brief, were *Thomas F. Keyes, Jr.,* corporation counsel, *James M. O'Connor, Charles Angelo* and *Stephen Darley,* for the appellants (named plaintiff et al.).

*Noel E. Hanf,* for the appellee (named defendant).

*Richard L. Barger,* assistant attorney general, with whom, on the brief, was *Carl R. Ajello,* attorney general, for the appellee (defendant public utilities commission).

COTTER, J. The plaintiffs have appealed from a judgment dismissing their complaint and denying an injunction and other relief by means of which they sought to effect the removal of a transmission line and supporting structures under construction by the defendant The United Illuminating Company, Inc., hereinafter called UI, within the city of New Haven.[1]

The material facts are as follows: The defendant UI applied to the defendant public utilities commission, hereinafter called the PUC, on October 6, 1970, for permission to construct a 115-KV overhead electrical transmission line within a 45-foot-

---

[1] The plaintiffs are the city of New Haven, the New Haven Housing Authority, the Fair Haven Betterment Association, Inc., the East Rock Neighborhood Association, Inc., and certain property owners whose premises abut or adjoin the railroad right of way over which the transmission line is being constructed.

wide right of way across property owned by the Penn Central Transportation Company, hereinafter called the railroad. This right of way runs generally northerly along the rear of property owned by the plaintiffs New Haven Housing Authority, Bertha Lenart and Anna M. Ruotolo, from UI's Quinnipiac substation to the rear of the Cedar Hill freight yards, all within the city of New Haven. The line was to be placed upon towers to be constructed by UI within the right of way of the railroad and includes the right of way containing the line which was being used for transportation of railroad passengers and freight service. The PUC gave written permission on November 12, 1970, to UI to build the line over the right of way as requested.

Subsequently, on April 12, 1971, UI applied to the PUC to modify its plans for the construction of the proposed line; the application was granted that same day. Finally, on April 18, 1971, UI applied for permission to extend the line and supporting towers from the Cedar Hill freight yards to UI's Grand Avenue substation; the PUC granted this application on April 29, 1971.

In the meantime, the New Haven board of aldermen had passed an ordinance on December 7, 1970, purporting to regulate the location and construction of all overhead electrical transmission lines within the city, including lines located on private property. This ordinance, referred to as § 120 of the code of ordinances of the city of New Haven, was to become effective on January 14, 1971.

On July 6, 1971, without conceding the validity of the ordinance, UI submitted a letter formally noti-

fying the board of aldermen of its plans to construct the transmission line. Later, after newspaper advertisements appearing on August 16 and 17, 1971, the board's municipal services committee reported favorably on UI's plans. In addition, a public hearing was held on November 22, 1971, by the committee concerning this report, following further newspaper advertisements of November 7, 8, 9, 19, 20, and 21. Construction of the towers to support the transmission line was initiated by UI in March, 1972; thereafter, on April 3, 1972, the board of aldermen rejected the municipal services committee's report favoring the plans.

The conductors of the transmission line were strung in February, 1973. At the time of the trial the line was in operation to serve UI's Quinnipiac substation.

The action in Superior Court was commenced by the plaintiffs by complaint dated May 15, 1972. The matter was decided on the basis of exhibits in the return, those presented to the court at the hearings and on a stipulation of facts agreed to by the parties. The parties also agreed that the court should hear and decide two issues of law raised by those facts, the court's determination of these issues in favor of the defendants to be dispositive of the case. These two issues were: "(a) Was there a legal requirement that the PUC give notice, or afford a hearing to the City, or other plaintiffs prior to or after rendering its orders [on November 12, 1970, on April 12, 1971, and on April 29, 1971, granting the aforementioned applications submitted by UI]? (b) Is the aforesaid Section 120 of the Code of Ordinances of the City of New Haven

within the power of the Board of Aldermen and valid, and was such ordinance applicable to the line in question?" The court decided both issues in favor of the defendants.

## I

The plaintiffs have attacked several findings and conclusions which form the basis of the court's determination that the plaintiffs were not entitled to notice or a hearing prior to or after the approval by the PUC of UI's proposed construction of the transmission line. The court's conclusions are tested by the finding and must stand unless they are legally or logically inconsistent with the facts found or involve the application of some erroneous rule of law material to the case. *Lonergan* v. *Connecticut Food Store, Inc.*, 168 Conn. 122, 124, 357 A.2d 910. Moreover, this court will not alter findings of fact made by the trial court which are reasonably supported by the evidence or which are based on inferences reasonably drawn from the evidence. *Schurgast* v. *Schumann*, 156 Conn. 471, 475, 242 A.2d 695.

## A

Initially, the plaintiffs claim they were entitled to notice and a hearing under various Connecticut statutory provisions.

## 1.

General Statutes § 16-234 provides, in pertinent part: "No . . . electric light company or association, nor any company or association engaged in distributing electricity by wires or similar conductors or in using an electric wire or conductor for any purpose, shall exercise any powers which may have

been conferred upon it to change the location of, or to erect or place, wires, conductors, fixtures, structures or apparatus of any kind over, on or under any *highway* or *public ground,* without the consent of the adjoining proprietors, or, if such company or association is unable to obtain such consent, without the approval of the commission, *which shall be given only after a hearing upon notice to such proprietors."* (Emphasis added.) The trial court found that the transmission line in question is located entirely within the right of way owned by the railroad and concluded that this right of way is neither a "highway" nor "public ground" within the meaning of § 16-234, and that the aforementioned statute did not require that either notice or a hearing be afforded to any of the plaintiffs prior to or after the PUC's approval of the transmission line. The plaintiffs have assigned error in the court's finding and conclusions, and they argue that the statute applied and required such notice and hearing.

The challenged finding, that the transmission line is located entirely within the railroad's right of way, is amply supported by the facts in the stipulation and by the statements appearing in the exhibits. Thus, the stipulation expressly indicates that the first segment of the transmission line was to be constructed "within a 45-foot wide right-of-way across property owned by the Penn Central Transportation Company." Furthermore, two of UI's applications to the PUC contain statements that this first segment of the line would be within and along the railroad's right of way. In addition, the third application, which concerns the construction of the second segment of the line, expressly states that all construction would be within the right of way.

The court's conclusion that the railroad's right of way is not a "highway" as contemplated by § 16-234 also rests on a firm basis. It is well settled that a statute must be applied as its words direct. *Dental Commission* v. *Tru-Fit Plastics, Inc.,* 159 Conn. 362, 365, 269 A.2d 265; *Obuchowski* v. *Dental Commission,* 149 Conn. 257, 265, 178 A. 537. Moreover, words and phrases in a statute are construed according to their commonly accepted usage. *Klapproth* v. *Turner,* 156 Conn. 276, 280, 240 A.2d 886. Indeed, if the statutory language is clear and unambiguous, there is no room for construction. *United Aircraft Corporation* v. *Fusari,* 163 Conn. 401, 411, 311 A.2d 65. To determine the meaning of a word used in a statute, we may look to related statutory provisions for guidance. *Bania* v. *New Hartford,* 138 Conn. 172, 176–77, 83 A.2d 165; see also *Waterford* v. *Connecticut State Board of Education,* 148 Conn. 238, 243, 169 A.2d 891. Our attention has not been directed to anything which would persuade us that the word "highway" as used in § 16-234 includes within its reach a right of way such as is owned by the railroad in the present case. The plain meaning of the word "highway" is "[a] main road or thoroughfare; hence, a road or way open to the use of the public." Webster's New International Dictionary (2d Ed.) 1179. It is thus that this court has customarily understood the word. We have stated, for example, that the essential feature of a highway is that "every traveler has an equal right in it with every other traveler." *Laufer* v. *Bridgeport Traction Co.,* 68 Conn. 475, 488, 37 A. 379. As the trial court stated in its memorandum of decision, "the term 'highway' is ordinarily used in contradistinction to a private way, over which only a limited number of persons have the right to pass." *Stavola*

v. *Palmer,* 136 Conn. 670, 683, 73 A.2d 831. Moreover, while chapter 283 of title 16 of the General Statutes, of which § 16-234 is a part, nowhere defines the words "highway" or "right of way," the two terms are differentiated from one another in chapter 279 of title 16. In § 16-96 of the General Statutes, for example, it is stated that "[w]hen any highway or street is altered by any railroad company with the consent of the commission, and it is necessary to take any land *for a highway* to which such company has not obtained title, and over which neither such company nor the town in which such alteration is made has any *right of way, . . .* the same proceedings shall be had for the purpose of procuring the required right of way as are provided in section 16-86 for taking land for railroad purposes."[2] (Emphasis added.) Finally, there is nothing in the statute itself suggesting that a judicial reading of the word "highway" so as not to include the railroad's right of way in this case would in any way frustrate the overall purpose of the statute. *Northeastern Gas Transmission Co.* v. *Collins,* 138 Conn. 582, 592, 87 A.2d 139.

Nonetheless, as the court also found, portions of the railroad right of way within which the transmission line is located pass over or under six streets in New Haven, viz., Grand Avenue, Middletown Avenue, Blatchley Avenue, Humphrey Street, Ferry Street and James Street. Accordingly, the plaintiffs argue that the transmission line is, in effect, being erected or placed "over, on or under any highway" within the meaning of § 16-234, so

[2] Title 16 of the General Statutes involves, generally, "public service companies." Chapter 283 concerns "telegraph, telephone, illuminating, power and water companies." Chapter 279 pertains to "railroad construction and location."

that, contrary to the court's conclusion, the giving of notice and a hearing was a prerequisite to the PUC's approval of the line. The statute, however, requires only that notice and a hearing be afforded to "adjoining proprietors" who refuse to consent to the proposed construction. The record does not disclose, nor do the plaintiffs claim, that the plaintiffs housing authority, betterment association, neighborhood association, or the two individual plaintiffs, are proprietors adjoining the street crossings which they assert to be relevant. According to the unchallenged stipulated facts found by the court, the only property involved in this case owned by any of these plaintiffs is property on Quinnipiac Avenue, which the route maps presented to the court as exhibits indicate are not crossed by the transmission line. The claim has been made that the plaintiff city of New Haven, as the "owner" of the city streets crossed by the transmission line within the railroad right of way, constitutes an "adjoining proprietor" entitled to notice and a hearing by § 16-234. Such a theory, however, is at odds with the plain meaning of the term "adjoining proprietors" as it is used in § 16-234. See, e.g., *Mitchell* v. *Southern New England Telephone Co.*, 92 Conn. 633, 635, 103 A. 754. The purpose of this provision is manifestly to make the procedural safeguards of notice and a hearing available to owners of property *contiguous* to the highway or public ground over, on, or under which the transmission line or other facility in question is erected or placed. This is the meaning generally ascribed to the term "adjoining" when used in reference to property owners or holders. *State ex rel. Boynton* v. *Bunton*, 141 Kan. 103, 105, 40 P.2d 326; *Brown* v. *Texas & N. O. R. Co.*, 295 S.W. 670, 674 (Tex. Civ. App.); 1 Am. Jur. 2d, Adjoin-

ing Landowners, § 1; Black's Law Dictionary (4th Ed. Rev.) 62. No showing has been offered or made in this case that the plaintiff city is a proprietor "adjoining" any of the streets crossed by the railroad's right of way within the meaning of the pertinent provisions of § 16-234.

Accordingly, the court did not err in concluding that none of the plaintiffs in this case was entitled to notice and a hearing under § 16-234.[3]

## 2.

There is no dispute over the court's conclusion that in entering its orders the PUC was exercising its jurisdiction under § 16-243 of the General Statutes.[4] In addition, the plaintiffs concede in their brief that this statute did not by its terms require notice and a hearing *prior to* the issuance of PUC's orders in the present case. Nonetheless, they argue

[3] The plaintiffs have not claimed that the court erred in concluding that the railroad's right of way is not "public ground" within the meaning of § 16-234; thus the propriety of the court's decision in this respect need not be discussed.

[4] "[General Statutes] Sec. 16-243. JURISDICTION OF COMMISSION OVER ELECTRICITY TRANSMISSION LINES. The commission shall have exclusive jurisdiction and direction over the method of construction or reconstruction in whole or in part of each system used for the transmission of electricity, with the kind, quality and finish of all materials, wires, poles, conductors and fixtures to be used in the construction and operation thereof, and the method of their use, including all plants and apparatus used for generating electricity located upon private property upon which there are conductors capable of transmitting electricity to other premises in such manner as to endanger any person or property. The commission may make any order necessary to the exercise of such power and direction, which order shall be in writing and entered in the records of the commission. Each person or corporation operating any such system or generating plant shall, at its expense, comply with such order. Any person violating any provision of any such order shall be subject to the penalty prescribed in section 16-41."

that this provision must be considered in light of the "entire statutory scheme" affecting these proceedings. Specifically, they claim that the statutory grant of a right of appeal to the Court of Common Pleas under § 16-35 of the General Statutes[5] to any city or person, inter alia, "aggrieved" by an order, authorization, or decision of the PUC would be "meaningless" if the PUC were not also required to give notice of its order, authorization or decision in a timely manner *after* filing such order, authorization, or decision but before the thirty days allowed by § 16-35 to bring an appeal has expired. The plaintiffs further claim that they received no formal notice of the PUC's actions until July 6, 1971, more than thirty days after the PUC had given its final approval of UI's proposals (April 29, 1971). Their argument, in essence, is that, when read together, §§ 16-243 and 16-35 constituted a "legislative direction" to the PUC to notify the plaintiffs formally of its action within the statutory appeal period. Accordingly, they have assigned error in the court's refusal to rule on claims of law in which they advanced this interpretation of the statute. There might be more force to the plaintiffs' claims in this respect had there been any showing in the trial court that they were "aggrieved" in some way by the PUC's orders for purposes of taking an appeal

[5] "[General Statutes] Sec. 16-35. APPEALS TO COURT OF COMMON PLEAS. Any company, town, city, borough, corporation or person aggrieved by any order, authorization or decision of the commission, except an order, authorization or decision of the commission approving the taking of land, in any matter to which he or it was or ought to have been made a party, may appeal therefrom to the court of common pleas within thirty days after the filing of such order, authorization or decision. The party so appealing shall give bond to the state, with sufficient surety, for the benefit of the adverse party, in such sum as the commission fixes, to pay all costs in case he or it fails to sustain such appeal."

under § 16-35, as the meaning of that term was recently discussed by this court in *New Haven* v. *Public Utilities Commission,* 165 Conn. 687, 698–704, 345 A.2d 563. However, the trial court, on the basis of the stipulated questions properly before it and because this action was not brought under the appeal statute, § 16-35, had no occasion to determine whether any of the plaintiffs had been so "aggrieved," and whether, as a result, the PUC was subject to the purported "legislative direction" claimed by the plaintiffs. The court did not err, then, in declining to rule on the asserted claims of law of the plaintiffs; rather, in view of the limited scope of the stipulated questions, its conclusion that the plaintiffs were not entitled to notice after the approval of the transmission line by the PUC under § 16-243 properly precluded any consideration of these claims.

3.

The plaintiffs have also assigned error in the court's conclusion that § 16-9 of the General Statutes[6] did not require that written notice of the PUC's approval of the transmission line be given to the plaintiffs. The statute states that such notice "shall be given to the company or person affected" by the PUC's orders, decisions or authorizations in

[6] "[General Statutes] Sec. 16-9. ORDERS. All decisions, orders and authorizations of the commission shall be in writing and shall specify the reasons therefor, shall be filed and kept in the office of the commission and recorded in a book kept by it for that purpose and shall be public documents. Said commission may, at any time, for cause shown, upon hearing had after notice to all parties in interest, rescind, reverse or alter any decision, order or authorization by it made. Written notice of all orders, decisions or authorizations issued by the commission shall be given to the company or person affected thereby, by personal service upon such company or person or by registered or certified mail, as the commission determines."

question. We construed a similar notice provision in General Statutes (Rev. 1949) § 5646, which was the predecessor to General Statutes § 16-235 and which pertained to the scope of the power of a local zoning commission over the location of a public service generating plant, to require the issuing authority to provide written notice of its orders only upon those who were "under a duty to comply with the order," e.g., the party who seeks the ruling from the issuing authority. *Wilson Point Property Owners Assn.* v. *Connecticut Light & Power Co.,* 145 Conn. 243, 266, 140 A.2d 874. In reaching this conclusion, we stated: "It would be unreasonable to suppose that the legislature, in providing for the giving of written notice of the order of the zoning commission, intended that personal service should be made upon every property owner who might claim to be personally affected." The same considerations persuade us that a similarly restrictive interpretation of the notice provision in § 16-9 is warranted here. The fact that the legislature used the words "the company or person" instead of "the companies or persons" suggests that it intended that notice should be given to the applicant, if the order were issued in response to an application, or, in other cases, to the party to whom the order was directed. We conclude that the court correctly interpreted and applied the notice provision of § 16-9 to the facts as stipulated in the proceedings below.

### 4.

Finally, the plaintiffs have assigned error in the court's conclusion that section 16-11-139 of the PUC's regulations pertaining to electrical standards and specifications did not require either notice to or consent from the city of New Haven prior to or

after the approval of the transmission line. The PUC regulation in question states that a petition to the PUC for approval of a transmission line "shall be accompanied" by, inter alia, "copies of letters from each . . . municipality or other utility affected, stating that it has been notified of the details of the proposed line and that it offers no objection to the method or manner of construction." Regs., Conn. State Agencies § 16-11-139 (2). The term "municipality" is defined in the regulations to mean "a town, city, borough or any municipality or department thereof, owning, leasing, maintaining, operating, managing or controlling electric plants or parts of electric plants within this state." Id. § 16-11-100 (b). The court concluded that the plaintiff city is not a "municipality" as defined in § 16-11-100 (b), a conclusion which the plaintiffs have assigned as error. In connection with this conclusion, the court made a finding which the plaintiffs do not challenge: from 1946 through 1973, it was the consistent practice of the PUC to interpret the regulations in question such that no city was construed to be a "municipality" under § 16-11-100 (b) unless it owned, leased, maintained, operated, managed or controlled an electric plant. The court also found that there was no evidence that during any time relevant to the action the city of New Haven owned, leased, maintained, operated, managed or controlled any electric plant or part thereof,[7] and thereupon concluded that the city was not a "municipality" under § 16-11-100 (b). The court properly attached the weight it did to the past interpretation of the term "municipality" in

---

[7] The plaintiffs have conceded the accuracy of this finding in their brief, thereby abandoning their earlier claim of error to the contrary.

§ 16-11-100 (b) by the PUC in reaching this conclusion. We have stated that "[t]he practical interpretation of legislative acts by governmental agencies responsible for their administration is a recognized aid to statutory construction." *State ex rel. James* v. *Rapport,* 136 Conn. 177, 182, 69 A.2d 645. Indeed, it has been said that where the governmental agency's time-tested interpretation is "reasonable" it should be accorded "great weight" by the courts. *Investment Company Institute* v. *Camp,* 401 U.S. 617, 626–27, 91 S. Ct. 1091, 28 L. Ed. 2d 367. In this case, the term "municipality" was not part of a statute enacted by the legislature, but, rather, part of the PUC's own regulatory scheme dealing with electrical standards and specifications. Our review of this regulatory scheme discloses that the PUC's interpretation of the term was indeed reasonable, particularly in view of the notable absence of ambiguity in the language used in the definition of the term in § 16-11-100 (b). The court, then, was fully warranted in accepting the PUC's long-standing interpretation of the term appearing in one of its own regulations and applying it to the facts of the case at hand. See *Zuber* v. *Allen,* 396 U.S. 168, 192, 90 S. Ct. 314, 24 L. Ed. 2d 345. We find no fatal inconsistencies then in its ultimate conclusion that § 16-11-139 of the regulations did not require notice to or consent from the plaintiff city prior to or after the PUC's approval of the transmission line.

B

The plaintiffs have also assigned error in the court's conclusion that the due process clauses of the fourteenth amendment to the United States constitution and article first, § 8, of the Connecticut con-

stitution[8] did not require that either a notice or a hearing be afforded to any of the plaintiffs prior to or after the approval of the transmission line by the PUC. To determine whether such procedural due process requirements apply, the court must first determine whether a party has been deprived of liberty or property by some action of the government; furthermore, in making this determination, "we must look not to the 'weight' but to the *nature* of the interest at stake," any "weighing process" being relevant only to a "determination of the *form* of hearing required in particular situations." *Board of Regents* v. *Roth,* 408 U.S. 564, 570–71, 92 S. Ct. 2701, 33 L. Ed. 2d 548; see also *Goss* v. *Lopez,* 419 U.S. 565, 95 S. Ct. 729, 42 L. Ed. 2d 725. In this case, the plaintiffs argue that the photographic exhibits which the court incorporated into its finding establish that the towers and lines constructed as part of the project approved by the PUC interfered with the plaintiff housing authority's enjoyment of light, air and view appurtenant to its ownership of real property. It is true, of course, that "the property interests protected by procedural due process extend well beyond actual ownership of real estate, chattels, or money." *Board of Regents* v. *Roth,* supra, 571–72. Nonetheless, "[p]roperty interests . . . are not created by the Constitution. Rather, they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law." *Board of Regents* v. *Roth,* supra, 577; see also *Goss* v. *Lopez,* supra; cf. *Gotkin* v. *Miller,* 379 F. Sup. 859, 868

---

[8] We have held that the due process clauses of both constitutions have the same meaning. *Katz* v. *Brandon,* 156 Conn. 521, 537, 245 A.2d 579.

(E.D. N.Y.). To invoke the requisites of procedural due process legal rights of parties must be directly affected. *Hannah* v. *Larche,* 363 U.S. 420, 422, 80 S. Ct. 1502, 4 L. Ed. 2d 1307. Neither the stipulated facts as found by the court nor the exhibits incorporated in its finding disclose the existence of any statute, contract, or easement, express or implied, which might conceivably serve as the basis for its claimed right to light, air, and view unobstructed by such structures as the towers and lines involved in this case. See General Statutes § 47-25; *Harris* v. *Pease,* 135 Conn. 535, 539, 66 A.2d 590; *Puorto* v. *Chieppa,* 78 Conn. 401, 404, 62 A. 664; *Robinson* v. *Clapp,* 65 Conn. 365, 384, 32 A. 939; 1 Am. Jur. 2d, Adjoining Landowners, §§ 89–90; 29 C.J.S., Electricity, § 17. In short, the plaintiffs failed to establish that the PUC's approval of the transmission line operated so as to deprive the plaintiff housing authority of a constitutionally protected property interest in the light, air and view appurtenant to its ownership of the property in question. In this respect, then, the court's conclusion that procedural due process did not require notice or a hearing was proper under the circumstances of this case.

The only other argument advanced by the plaintiffs in support of their claim of error in this conclusion by the court is that the plaintiff city of New Haven was "aggrieved" by the PUC's action within the meaning of General Statutes § 16-35. However, as we pointed out previously, the court did not find, nor did it have reason to find, that the plaintiff city of New Haven was "aggrieved" in this case. Determining aggrievement for purposes of bringing an appeal from an administrative agency pursuant to a statute such as § 16-35 is procedurally different from determining whether a party has been

deprived of a constitutionally protected property interest and is entitled to notice and a hearing under the due process clauses of the federal and state constitutions.

The plaintiffs betterment association, neighborhood association and the individual plaintiffs have not specifically delineated or proved the existence of any constitutionally protected property interest which would entitle them to notice or hearing.

We need not consider the additional claims of error in the rulings of the court related to this conclusion since to do so would not affect our decision as to its propriety.

II

Error has also been assigned in the court's conclusion that § 120 of the code of ordinances of the city of New Haven[9] was beyond the power of its board of aldermen to enact and invalid. We have stated that "[a]s a creature of the state, a munic-

[9] New Haven Code of Ordinances, Sec. 120:

"No overhead electric transmission lines and towers shall be allowed hereafter in the City of New Haven, except as follows: A public service company may petition the Board of Aldermen for approval of an overhead transmission line and tower proposal by filing with the City Clerk detailed plans including a rendering of the proposed construction, together with a written application describing in full the compliance with the standards for review which are described below. The City Clerk shall refer the applications and plans to the appropriate committee of the Board of Aldermen for a public hearing thereon after at least two weeks' public notice. The Board of Aldermen shall obtain from the City Plan Commission an advisory report on the proposal, which report shall be available at the time of the public hearing.

The Board of Aldermen shall approve the petition only upon specific findings that

(a) the proposed plans and application are in accordance with the public convenience and welfare, after taking into account

ipality can exercise only such powers as are expressly granted it or such powers as are necessary to enable it to discharge the duties and carry into effect the objects and purposes of its creation." *New Haven Water Co.* v. *New Haven,* 152 Conn. 563, 566, 210 A.2d 449. Significantly, exclusive jurisdiction over the manner of construction and direction of overhead electric transmission lines located upon private property has been granted by statute to the PUC. General Statutes § 16-243; *Connecticut Light & Power Co.* v. *Costello,* 161 Conn. 430, 444, 288 A.2d 415. Municipalities have been expressly precluded from exercising jurisdiction over such subject-matter by General Statutes § 16-235. The court in this case properly found that the transmission line in question is located entirely within the railroad's right of way, which is neither a highway nor public ground as contemplated by § 16-234 of the General Statutes. The exclusivity of the PUC's jurisdiction over the construction of

the impact of such proposal upon neighboring uses in the surrounding area compared with the public need for the proposal at the particular location,

(b) the effect on present and future development of neighboring properties including existing redevelopment plans or foreseeable redevelopment and reclamation plans,

(c) the proximity of dwellings, churches, schools, public buildings and other places of public gathering,

(d) the environmental impact of the proposed action,

(e) any adverse environmental effects which cannot be avoided should the proposal be implemented,

(f) alternatives to the proposed action,

(g) the relationship between local short term uses of the City environment and the maintenance and enhancement of long term productivity,

(h) any irreversible commitments of resources which would be involved in the proposed action should it be implemented,

(i) effect on the comprehensive plan of the City of New Haven."

transmission lines located upon such private property as the railroad's right of way in this case is subject to no exceptions or limitations identified in the statute which are relevant to this case. Contrary to the claim of the plaintiffs the court properly concluded that the board of aldermen lacked the power to enact the ordinance in question insofar as it purported to regulate the construction of overhead transmission lines located upon private property. Furthermore, the plaintiffs' claim that UI waived its rights to assert the invalidity of the ordinance is without foundation, inasmuch as the court's conclusion to the contrary is fully supported by the statement in UI's letter of July 6, 1971, to the board of aldermen that "by this letter [UI] does not intend to waive or foreclose any claim it may hereafter make regarding the limits of power vested in your Board by Section 16-235 of the General Statutes."

We need not consider the plaintiffs' other claims of error since to do so would not affect the result in this case.

There is no error.

In this opinion the other judges concurred.