[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
Before the court is the plaintiff's motion to strike the defendant's special defense to the plaintiff's complaint.
The present case arises out of an automobile accident in which the automobile operated by the plaintiff Alice Bertz was CT Page 5967 struck by an automobile driven by Christopher Couchman ("the underinsured"). The plaintiff and her husband, who brought a claim for loss of consortium, settled their claims against the underinsured and his carrier for the full amount available under his liability policy.
The plaintiffs have instituted the present action against the defendant, their auto insurance carrier, seeking underinsured motorist benefits under their policy issued by the defendant. In its first special defense to the plaintiff's complaint, the defendant asserts that the plaintiffs' claims are barred because they failed to comply with the terms of the policy requiring them to obtain the defendant's consent to settle the underlying liability claim against the underinsured and his carrier. For reasons which follow, the motion to strike is denied.
The policy contains the following "consent-to-settle" clause:
There is no coverage:
 1. for any insured who, without our written consent, settles with any person or organization who may be liable for the bodily injury or property damage.
(See Policy, p. 21, attached as Exhibit A to Plaintiffs' Amended Complaint.)
The plaintiffs move to strike the first special defense on the ground that the "consent to settle" clause contained in the defendant's underinsured motorist endorsement is ambiguous and void as against public policy. Accordingly, the plaintiffs argue that the first special defense is legally insufficient, in that it relies on unenforceable provisions of the insurance contract between the parties. The defendant objects to the motion, arguing that the "consent to settle" exclusion is valid under Connecticut law and is necessary to protect its right of subrogation against the uninsured.
The motion to strike is denied. The court holds that the clause is not voided by ambiguity or public policy as the plaintiff suggests. Whether the defendant will be able to ultimately prove and prevail upon its special defense is another CT Page 5968 matter, but that cannot be determined as a matter of law on a motion to strike where procedurally the court must afford the pleader of that special defense all favorable inferences.
 "The purpose of a motion to strike is to `contest . . . the legal sufficiency of the allegations of any complaint . . . to state a claim upon which relief can be granted.' In ruling on a motion to strike, the court is limited to the facts alleged in the complaint. The court must construe the facts in the complaint most favorably to the plaintiff." (Citations omitted.) Gordon v. Bridgeport Housing Authority, 208 Conn. 161, 170, 544 A.2d 1185 (1988).
Novametrix Medical Systems, Inc. v. BOC Group, Inc., 224 Conn. 210,214-15, 618 A.2d 25 (1992). "In ruling on a motion to strike, the trial court is limited to considering the grounds specified in the motion." (Citations omitted.) Meredith v.Police Commissioners, 182 Conn. 138, 140, 438 A.2d 27 (1980).
"The purpose of a special defense is to plead facts that are consistent with the allegations of the complaint but demonstrate, nonetheless, that the plaintiff has no cause of action. Practice Book § 164." Grant v. Bassman, 221 Conn. 465,472-73, 604 A.2d 814 (1992).
The issue raised by this motion to strike, i.e. the validity under Connecticut law of a "consent-to-settle" clause in an uninsured or underinsured ("UM"and "UIM," respectively) motorist policy endorsement, has not been addressed by an appellate tribunal of this state. The purpose of the "consent-to-settle" clause in an UIM endorsement is to protect the insurer's right of subrogation against the tortfeasor. Couch on Insurance, (2d Ed. 1981), § 45:645, p. 185; see also Longworth v.Van Houten, 223 N.J. Super. 174, 538 A.2d 414, 419
(N.J.Super. App. Div., 1988); MacCinnis v. Aetna Life Casualty Co.,403 Mass. 220, 526 N.E.2d 1255 (Mass. 1988). Generally, such clauses in UIM endorsements are not against public policy and are valid. Annot., 18 A.L.R. 4th 249, § 7 and cases cited therein; Couch on Insurance, supra, § 45:645, p. 185; see also, e.g., Aetna Casualty Surety Co. v. Poirier, 371 Mass. 257,261, 356 N.E.2d 452 (1976); General Accident Insurance Co. ofAmerica v. Taplis, 493 So.2d 32, 33 (Fla.App. 1986). However, CT Page 5969 other jurisdictions have determined that such clauses conflict with the statutory scheme for UIM insurance, and are therefore void as against public policy. Annot., 18 A.L.R. 4th 249, § 8 and cases cited therein; see also Longworth v. Van Houten,
supra, 538 A.2d 419 (N.J.Super. App. Div.).
The interplay between rights and obligations of the insured, the insurer, the underinsured tortfeasor and the tortfeasor's insurer with respect to a claim for underinsured motorists benefits is clearly discussed in Longworth v. VanHouten, supra, 538 A.2d 419, as follows:
 Obviously, the victim may recover from the [underinsured or uninsured] tortfeasor only by judgment or settlement. Obtaining judgment requires the institution of litigation with all its inevitably attendant delay and expense. It would thus ordinarily be in the best interests of a victim whose damages exceed the tortfeasor's coverage to settle as expeditiously as possible with the tortfeasor's insurer for or close to the policy limits and then promptly resort to his own UIM coverage. But as a practical matter, the victim can only settle with the underinsured tortfeasor by giving him a general release. This is so since the tortfeasor's insurer, which controls settlement negotiations and any litigation against the tortfeasor as well as the pocketbook (up to the policy limits), owes a duty to its own insured, the tortfeasor, to provide him with the protection of a general release by the victim extinguishing the UIM carrier's right of subrogation against the tortfeasor, that right being no greater than the victim's own remaining right against the tortfeasor. . . . Thus, the sole function of the consent to settle clause is the preservation of the subrogation right. Consequently, the victim cannot simultaneously give a release to the tortfeasor and protect his UIM insurer's right of subrogation. If he gives a release, he will have extinguished his UIM carrier's right of subrogation, an act which, under the policy, affords the carrier grounds for disclaiming its UIM liability. If he will not give a release, he cannot settle with the tortfeasor and, consequently, he will be able to seek recovery under his UIM endorsement only if he proceeds to judgment CT Page 5970 against the tortfeasor, incurring the expense and delay of litigation, even where the tortfeasor's carrier is willing to accept the policy limits.
(Citations omitted.) Id. Accordingly, when the insurer refuses to consent to the insured's settlement with the tortfeasor, the insured is forced to either proceed to judgment against the tortfeasor, in order to recover UIM benefits, or settle with the tortfeasor and waive any UIM benefits by operation of the "consent-to-settle" exclusion. Where the insured therefore proceeds to judgment against the tortfeasor, the insurer will benefit from the insured's judgment, in that UIM endorsements in automobile insurance policies usually provide that the insured must hold in trust and exercise on behalf of the insurer any rights against third party tortfeasors. See § 38a-334-6(e)[1]
(formerly § 38-175a-6(a)) Regulations of Connecticut State Agencies. Even if the insured is unable to satisfy a judgment against the tortfeasor due to lack of assets, the insurer is obligated to provide UIM benefits to the insured upon the exhaustion of the tortfeasor's automotive liability coverage. See Continental Insurance Co. v. Cebe-Habersky, 213 Conn. 209,571 A.2d 104 (1990). The effect of the insurer's refusal to consent to settlement, therefore, is to ensure that the insured will not settle a claim against the tortfeasor for the amount of the tortfeasor's policy — thus giving a full release and extinguishing any right of subrogation — when the tortfeasor has substantial assets or may latter acquire assets from which the insurer would be able to satisfy any judgment above the tortfeasor's policy limits obtained by the insured. See §38a-334-6(e) of the Regulations of Connecticut State Agencies; see also General Accid. Insur. Co. of America v. Taplis, 493 So.2d 33
(Fla.App. 1986) (insurer prejudiced by insured's failure to obtain consent to settle against healthy 23 year old male tortfeasor with $32,000 annual salary and unrestricted future earning capacity; probability was that he would have assets in the future with which insurer could satisfy a judgment against him, thus recouping underinsured benefits paid to insured).
The plaintiff argues that in Connecticut, an UM/UIM carrier does not have a right of subrogation against the tortfeasor because Connecticut only recognizes statutorily authorized assignments of tort claims. Therefore, the plaintiff argues that the "consent-to-settle" clause of the defendant's policy is void because it is based on an unenforceable right of subrogation. The plaintiff cites Berlinski v. Ovellette,
CT Page 5971168 Conn. 482, 485-94 (1973) for the proposition that Connecticut law invalidates a UM/UIM carrier's right of subrogation.
The court in Berlinski noted that in Connecticut statutory authority is necessary to assign an action for personal injuries before judgment. Id. 485. In Berlinski, however, the court held invalid a trust agreement contained in the insurer's policy assigning to the insurer the right to prosecute and control at its own expense and by its choice of counsel the plaintiff's entire cause of action against the third-party tortfeasor. Id., 487. The court, however, recognized a distinction between assignments of personal injury actions prior to judgment, and those valid assignments following judgment, noting that the common law prohibition against assignments of personal injury actions applies only to assignments prior to judgment. Id., 485[2]. The "court recognized in Berlinski (p. 485) that the common-law prohibition against assignment of a personal injury claim would not apply once the claim had been reduced to judgment." Ciulewicz v. Doyle, 172 Conn. 177, 374 A.2d 175
(1976) (noting that a judgment could be assigned at common law, regardless of statutory authority, even if judgment involved a personal injury claim). Accordingly, under the present State of Connecticut law on the subject, a right of subrogation exists in the insured's judgment. The insurance regulations adopted by the insurance commissioner pursuant to General Statutes §38a-334 recognize the insurer's right of subrogation in any judgment obtained by the insured and, more importantly, the insurer's right to consent to the insured's settlement with the tortfeasor. Section § 38a-334-6(e) of the Regulations of Connecticut State Agencies is consistent with the rule allowing assignment of judgments, in that it allows the insurer to
 require the insured to hold in trust all rights against third parties or to exercise such rights after the insurer has paid any claim, provided that the insurer shall not acquire by assignment, prior to settlement or judgment, its insured's right of action to recover for bodily injury from any third party.
(Emphasis added.)
Furthermore, section 38a-334-6(c) of the Regulations of Connecticut State Agencies expressly authorizes "consent-to-settle" provisions in automobile insurance policies under Connecticut law.[3] The regulation provides as follows: CT Page 5972
(c) Exclusions. the insurer's obligations to pay may be made inapplicable:
 (1) To any claim which has been settled with the uninsured motorist without the consent of the insurer.
(Emphasis added.) Section 38a-334-6(c)(1) of the Regulations of Connecticut State Agencies is
 "an accurate reflection of the legislative intent articulated in the . . . more general language [of General Statutes § 38a-334]." AFSCME v. New Britain, 206 Conn. 465, 470, 538 A.2d 1022 (1988). This presumption is further underscored by the Uniform Administrative Procedure Act, General Statutes § 4-166
et seq., which provides for legislative oversight through the legislative regulation review committee prior to approval of the regulations. General Statutes § 4-170.
General Accident Ins. Co. v. Wheeler, 221 Conn. 206, 211,603 A.2d 385 (1992). A regulation such as § 38a-334-6(c)(1) is
 presumed valid and, unless [it is] shown to be inconsistent with the authorizing statute, [it has] the force and effect of a statute. A person claiming the invalidity of a regulation has the burden of proving that it is inconsistent with or beyond the legislative grant. The insurance commissioner has a "very broad grant of regulatory authority" in filling in the interstices of the uninsured and underinsured motorist coverage legislation, and in doing so his regulation is entitled to "great deference."
(Citations omitted.) Travelers Ins. Co. v. Kulla, 216 Conn. 390399, 579 A.2d 515 (1990). "[T]he insurer may not, by contract, reduce its liability for such underinsured motorist coverage except as § 38-175a-6 [now § 38a-334-6] of the Regulations of Connecticut State Agencies expressly authorizes." Allstate v.Ferrante, 201 Conn. 478, 482-83, 518 A.2d 373 (1986). However, "a limitation of liability on uninsured or underinsured motorist coverage must be construed most strongly against the insurer."American Universal, supra, 196. CT Page 5973
Several superior court cases have addressed the validity of "consent-to-settle" clauses based on section 38a-334-6(c)(1). In Pinto v. Norfolk Dedham Mutual Fire Insurance Co.,8 CSCR 457 (Feb. 23, 1993) (Sylvester, J.), the court held that §38a-334-6(c)(1) was not invalidated by the subsequent adoption of General Statutes § 38a-336(b), which obligates the insurer to pay underinsured motorists benefits if the tortfeasor's coverage has been exhausted by way of settlement or judgment, because the purpose of section 38a-334-6(c)(1) "was to prevent claimants from quickly settling claims against tortfeasors for a small amount of money, possibly for below the tortfeasor's policy, knowing that they could then recover the remainder, or up to the policy limit of their damages under their uninsured motorist coverage, thereby putting a heavier burden on the innocent driver's insurance company." Id., 458. The court therefore found that the insurer's "consent-to-settle" clause, although based on a valid regulation, did not apply against an insured who settled with the tortfeasor for the limits of the tortfeasor's policy.[4]
However, commentators on Connecticut UIM and UM benefits have criticized the rationale of this case, noting that "it may be equally argued that the requirement of exhaustion only sets forth the circumstances under which an underinsured motorist claim arises; a claim which becomes subject to any valid exclusion." J. Berk M. Jainchill, Connecticut Law of Uninsured and Underinsured Motorist Coverage, (1993), §§ 3.12 p. 153; see also Continental Insurance Co. v. Cebe-Habersky, supra,214 Conn. 209 (exhaustion of tortfeasor's policy is a condition precedent of insurer's obligation to provide UM/UIM benefits). In addition, the reasoning employed by the court in Pinto is based on the overbroad assumption that "[u]nder Connecticut law, an insurance company has no right of subrogation against a tortfeasor." Pinto v. Norfolk Dedham Mutual Fire InsuranceCo., supra, 8 CSCR 457, citing Berlinski v. Ovellette, supra,168 Conn. 482. However, as is noted above, the insured has a right of subrogation to a personal injury claim reduced to judgment, satisfied or not. Ciulewicz v. Doyle, supra,172 Conn. 180.
Although section 38a-334-(6)(c)(1) was adopted when only uninsured motorists benefits were required; see J. Berk M. Jainchill, Connecticut Law of Uninsured and Underinsured Motorist Coverage, supra, 1994 Supplement, p. S-25; because the consent to settle clause would protect the insurer's right of CT Page 5974 subrogation to any unsatisfied judgment against an uninsured tortfeasor or a judgment against an underinsured tortfeasor above the amount of the tortfeasor's liability coverage, the general rule that insurance regulations apply equally to UIM and UM claims would also apply to § 38a-334-6(c)(1). See GeneralAccident Insurance Co. v. Wheeler, 221 Conn. 206, 211,603 A.2d 385 (1992); Nationwide Insurance Co. v. Gode, 187 Conn. 386,399-400, 446 A.2d 1059 (1982). In addition, the existence of section 38a-334-6(c)(1) expressly authorizing the "consent-to-settle" clause at issue here weighs against the finding that the clause in the defendant's policy is void. As noted above, "a person claiming the invalidity of a regulation has the burden of proving that it is inconsistent with or beyond the legislative grant." Travelers Insurance Co. v. Kulla, supra, 216 Conn. 399. Although the plaintiff argues that the consent to settle clause conflicts with the public policy articulated in General Statutes § 38a-334, the plaintiff does not raise the invalidity of §38a-334-6(c)(1) as a basis of the motion to strike. "In ruling on a motion to strike, the trial court is limited to considering the grounds specified in the motion." (Citations omitted.)Meredith v. Police Commissioners, 182 Conn. 138, 140,438 A.2d 27 (1980).
Accordingly, Berlinski recognized an insurer's right of subrogation to the judgment of a personal injury claim against an uninsured tortfeasor. The "consent-to-settle" clause protects that right of subrogation. See Ciulewicz v. Doyle,172 Conn. 177, 374 A.2d 175 (1976); Regulations of Connecticut State Agencies, §§ 38a-334-6(c)(1) (e). The "consent-to-settle" clause at issue here is authorized by section 38a-334-6(c)(1) of the Regulations of Connecticut State Agencies and is therefore valid. However, this is not to say that an insurer can withhold its consent to settlement when it is not prejudiced by the insured's settlement with the tortfeasor[5], or similarly when the refusal to consent to settlement would violate the "obligation of good-faith and fair dealing" imposed on the parties to an automobile insurance contract.[6] Nevertheless, insofar as the defendant's first special defense is based on the "consent-to-settle" clause of its UIM endorsement, which is authorized by section 38a-334-(6)(c)(1) of the regulations of Connecticut State Agencies, the defendant has a right to interpose such a defense. The plaintiffs' motion to strike the first special defense is denied.
FLYNN, J. CT Page 5975