[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION RE: APPLICATION TO VACATE AND/OR CORRECT (#101) AND OPPOSITION TO APPLICATION (#104)
The parties have stipulated and agreed on the following facts. On March 18, 1994, an automobile accident occurred involving the plaintiff, James Lebish, and Irena Anderson (Anderson). The accident was caused by the negligence of Anderson. The vehicle operated by Anderson was owned by Ahmed Jelani (Jelani). At the time of the collision, Jelani maintained a personal automobile policy with limits of $100,000 per person — $300,000 per accident and a personal umbrella policy in amount of $1,000,000, both issued by Allstate Insurance Co. (Allstate). At the time of the accident, Anderson was afforded coverage under the Allstate automobile policy as "any person using a covered auto." The plaintiff's vehicle was owned by his employer, Daybreak Florist, Ltd. (Daybreak) and was insured by CT Page 11473 the defendant, Continental Casualty Co., a subsidiary of CNA (CNA). The plaintiff was acting in the course and scope of his employment, and there is no dispute that he is an insured under the CNA policy.
The plaintiff filed a civil action against Anderson and Jelani, which resulted in a settlement. Pursuant to the settlement, the plaintiff was paid the limits of Jelani's Allstate automobile policy. Anderson was not an insured under the Allstate umbrella policy, and Allstate denied coverage as to Anderson under the umbrella policy. The plaintiff now seeks underinsured motorist benefits under Daybreak's CNA policy. CNA contends that the plaintiff has not exhausted the Allstate umbrella policy, and thus has not triggered the benefits available under the CNA policy.
The parties presented their claims to a three-member arbitration panel. A majority of the panel found that there was a statutory presumption that Anderson was Jelani's agent at the time of the accident, pursuant to General Statutes § 52-183. The majority also found that Jelani had $1,000,000 in umbrella coverage which would have been available to the plaintiff had the plaintiff succeeded in proving an agency relationship. While the majority opined that such a relationship would be difficult to prove, it concluded that the plaintiff was required, pursuant to General Statutes § 38a-336(b), to exhaust all other insurance policies, including the Allstate umbrella policy, if the plaintiff wished to collect underinsured benefits under Daybreak's CNA policy. The majority also determined that CNA did not act unreasonably in withholding its consent in regards to the settlement agreement. The majority concluded that because the plaintiff failed to exhaust the Allstate umbrella policy and failed to obtain the consent of CNA prior to settling with Allstate, he therefore was not entitled to underinsured benefits under the Daybreak CNA policy.
In dissent, one arbitrator found that the plaintiff was only required to exhaust the liability policy of one tortfeasor. The dissenter believed that the evidence did not establish that Anderson was Jelani's agent. The dissenter found that Anderson was covered under the Allstate automobile policy, but not under the Allstate umbrella policy. Therefore, since the plaintiff had exhausted the only policy available to him, the dissenter believed that the plaintiff met the exhaustion requirement of General Statutes § 38a-336(b) and under the CNA policy. The CT Page 11474 dissenter further believed that the plaintiff should not be required to pursue an impossible liability claim against Jelani as a prerequisite to collecting underinsured benefits.
The plaintiff seeks to vacate[1] and/or correct[2] the arbitration award on the ground that the majority exceeded their powers and/or imperfectly executed them in finding lack of exhaustion for the following reasons: (1) the decision ignores a letter from Allstate denying Jelani's liability under the umbrella policy; (2) the decision ignores evidence showing that Anderson stole Jelani's motor vehicle before the accident; (3) the decision erroneously concludes that the plaintiff must pursue a weak claim under Jelani's umbrella policy; and (4) the panel erroneously concluded that the plaintiff failed to exhaust all applicable automobile insurance policies.
General Statutes § 38a-336(c) provides: "Each automobile liability insurance policy . . . which contains a provision for binding arbitration shall include a provision for final determination of insurance coverage in such arbitration proceedings."[3] Our Supreme Court has held that this statutory provision makes arbitration of insurance coverage issues compulsory. See Bodner v. United Services Automobile Assn.,222 Conn. 480, 488, 610 A.2d 1212 (1992). "Questions of law decided by arbitrators in compulsory arbitration proceedings pursuant to General Statutes § 38a-336 are subject to de novo review by the court." Aetna Life Casualty Co. v. Bulaong 218 Conn. 51,58, 588 A.2d 138 (1991).
This ground is now moot, as the court granted the plaintiff's motion to amend the application to vacate and/or amend to reflect the real name of the party defendant pursuant to General Statutes § 52-130 on February 2, 1998.
CNA argues that, under the CNA policy and § 38a-336(b), the plaintiff is required to exhaust both the Allstate automobile policy and the Allstate umbrella policy before asserting an underinsured motorist claim. CNA relies on General Statutes § 38a-336(b), requiring exhaustion of all applicable policies.
The plaintiff argues that he has exhausted the only applicable policy, the Allstate automobile policy. The plaintiff contends that the Allstate umbrella policy was not available, since Allstate had informed the plaintiff that it was denying any liability under the umbrella policy. The plaintiff further CT Page 11475 asserts that contrary to the arbitrators' view, the plaintiff is not required to bring a declaratory action against Allstate to show the unavailability of the Allstate umbrella policy. The plaintiff also argues that to show the umbrella policy was applicable at the time of the accident, he would have to show that Anderson was acting as the Jelanis' agent at the time of the accident, a proposition that — given her admitted theft of the motor vehicle and subsequent departure from the United States — would be very difficult, if not impossible, to demonstrate.
"An insurance company shall be obligated to make payment to its insured up to the limits of the policy's uninsured and underinsured motorist coverage after the limits of liability under all bodily injury liability bonds or insurance policies applicable at the time of the accident have been exhausted by payment of judgments or settlements . . ." General Statutes § 38a-336(b). "The word `all' and the plural words `bonds' and `policies' found in § 38a-336(b) would be rendered meaningless if not read to require exhaustion of all of the polices applicable to the underinsured vehicle at the time of the accident. The language of the statute clearly anticipates circumstances under which coverage by more than one liability policy will be available . . ." Ciarelli v. Commercial Union Ins.Co., 234 Conn. 807, 811, 663 A.2d 377 (1995).
The majority of the arbitrators found that "Jelani had $1,000,000 in umbrella coverage from Allstate which would have been available to [the plaintiff] had [the plaintiff] succeeded in proving Anderson was Jelani's agent." They further found that the plaintiffs failure to pursue an agency theory in order to recover under the umbrella policy meant that the plaintiff did not satisfy the exhaustion requirement under § 38a-336(b). (Return of Record [ROR], Exhibit D, Findings and Award, ¶ 11). The majority concluded that "[t]he $1,000,000 Personal Umbrella Policy issued by Allstate to Ahmed Jelani was an insurance policy `applicable at the time of the accident,' if Anderson was operating Jelani's vehicle as Jelani's agent." (ROR, Exhibit D, Findings and Award, ¶ 13).
The umbrella policy provides the following definitions:"`You' or `Your' means the person named on the declarations page and that person's resident spouse . . .Insured' means: (a) you, and (b) any person related to you by blood, marriage or adoption who resides in CT Page 11476your household." (ROR, Exhibit G, Allstate Personal Umbrella Policy, p. 2). The policy further provides that coverage applies only to limited occurrences arising out of: "(1) personal activities of aninsured, including the lending by an insured of a land vehicle or watercraft owned by an insured . . . (4) the duties of your domestic or farm employees who are not subject to Workers Compensation Laws." (ROR, Exhibit G, Allstate Personal Umbrella Policy, p. 5).
The parties have agreed that Anderson was not a blood relative of Jelani, and was not an insured under the Jelanis' umbrella policy. (ROR, Exhibit F, Statement of Stipulations, ¶ 12). There was conflicting evidence received by the arbitrators, however, concerning whether Anderson stole the Jelani automobile, or was driving with permission.[4] Officer Joseph Bonauito of the Westport Police Department was the officer who filed the accident report relating the circumstances of the collision between the plaintiff and Anderson. (ROR, Exhibit B, Transcript p. 52). According to Officer Bonauito, at the time of the accident, Anderson stated that she was on her way to pick up the Jelani children at school. (ROR, Exhibit B, Transcript, p. 77).
On March 23, 1994, Anderson, accompanied by Mrs. Jelani, went to the police department. (ROR, Exhibit B, Transcript, p. 80). During this meeting, Anderson told Office Bonauito that she did not have permission to use the Jelanis' automobile, and that she had in fact stolen it. (ROR, Exhibit B, Transcript, p. 83). Mrs. Jelani had reported the automobile as stolen a day earlier. (ROR, Exhibit B, Transcript, p. 79). Officer Bonauito did not inquire as to the reason for Anderson's inconsistent statements. (ROR, Exhibit B, Transcript, p. 83). Officer Bonauito believed that Anderson was taking care of the Jelani children. (ROR, Exhibit B, Transcript, p. 85). At the March 23, 1994 meeting, Mrs. Jelani informed Officer Bonauito that the Jelanis were allowing Anderson to stay at their house as a favor to a family friend. (ROR, Exhibit B, Transcript, p. 84). Officer Bonauito testified that there was a school in the vicinity of where the accident took place. (ROR, Exhibit B, Transcript, pp. 86-87).
"Section 52-183 creates a rebuttable presumption that the operator of a motor vehicle is the agent and servant of the owner of the motor vehicle and operating it in the course of his employment. The presumption ceases to operate, however, when the trier finds proven facts which fairly put in issue the question, CT Page 11477 and the burden of proving that the car . . . was operated by an agent of the owner . . . then rests upon the plaintiff . . ." (Internal quotation marks omitted.) Felsted v. Kimberly AutoServices, Inc., 25 Conn. App. 665, 670, 596 A.2d 14, cert. denied, 220 Conn. 922, 597 A.2d 342 (1991).
The statutory presumption that, at the time of the accident, Anderson was the agent or servant of the Jelanis has been rebutted by the evidence that Anderson had in fact stolen the Jelanis' automobile. (ROR, Exhibit W, Sworn Statement of Irena Anderson). The evidence supports the conclusion that at the time of the accident, Anderson was not acting as the agent or servant of the Jelanis'. No evidence was received, other than the speculations of Officer Bonauito, that Anderson was the Jelanis' childcare provider or served in some other domestic capacity. In addition, the parties have stipulated that Anderson is not related to the Jelanis by blood and is not an insured under the umbrella policy. Pursuant to the clear language of the Allstate umbrella policy, Anderson was not an insured under the umbrella policy. The policy did not extend to the vehicle at the time of the accident under the coverage provision of the umbrella policy.
"An insurance policy is to be interpreted by the same general rules that govern the construction of any written contract and enforced in accordance with the real intent of the parties as expressed in the language employed in the policy . . . The determinative question is the intent of the parties, that is, what coverage the . . . [insured] expected to receive and what the [insurer] was to provide, as disclosed by the provisions of the policy . . . It is axiomatic that a contract of insurance must be viewed in its entirety, and the intent of the parties for entering it derived from the four corners of the policy . . . The policy words must be accorded their natural and ordinary meaning . . . [and] any ambiguity in the terms of an insurance policy must be construed in favor of the insured because the insurance company drafted the policy . . ." (Citations omitted; internal quotation marks omitted.) Imperial Casualty AndIndemnity Co. v. State, 246 Conn. 313, 324-25, ___ A.2d ___ (1998).
On its face, Anderson was not an insured under the Allstate umbrella policy. In addition, there is no evidence indicating that at the time of the accident, Anderson was acting as the Jelanis' agent. To the contrary, the evidence shows that Anderson stole the vehicle and was not the Jelanis' agent. Because CT Page 11478 Anderson was not an insured and the policy coverage did not extend to the vehicle at the time of the accident, the umbrella policy was not applicable. The plaintiff, by exhausting the Jelanis' Allstate automobile policy, exhausted all policies applicable at the time of the accident, and is entitled to receive underinsured motorist benefits under Daybreak's CNA policy.
CNA argues that Daybreak's policy contains a clause which provided that coverage would be excluded for any claim settled without CNA's consent. CNA contends that the plaintiff settled his claim, releasing Anderson, Jelani and Allstate from all liability arising from the accident despite express notice that he did not have CNA's consent. The plaintiff argues that CNA unreasonably withheld its consent to settle in breach of its own obligations. The plaintiff contends that CNA was not prejudiced by the settlement agreement, and that CNA unreasonably refused to consent to the settlement. The plaintiff argues that CNA's insistence that the umbrella policy provided additional coverage was unreasonable in light of the fact that Anderson was not an insured and the incident was not covered by the policy.
Although a consent-to-settle clause is designed to protect the right of subrogation, "this is not to say that an insurer can withhold its consent to settlement when it is not prejudiced by the insured's settlement with the tortfeasor, or similarly when the refusal to consent to settlement would violate the obligation of good-faith and fair dealing' imposed on the parties to an automobile insurance contract." Bertz v. Horace Mann Ins. Co., Superior Court, judicial district of Waterbury, Docket No. 115842 (June 19, 1995, Flynn, J.) (14 Conn. L. Rptr. 523, 526-27).
In light of the fact that there was only one Allstate policy applicable at the time of the accident, and because that policy was exhausted, CNA has not been prejudiced by the settlement and release. The plaintiff has exhausted all of the funds available from the one applicable policy. CNA's refusal to consent to the settlement between the plaintiff and Anderson, the Jelanis and Allstate was unreasonable.
The award of the arbitrators is vacated on the ground that the majority imperfectly executed its power by: (1) failing to find that there was only one applicable policy at the time of the accident, which was the Allstate automobile policy; (2) failing to find that the plaintiff exhausted the limits of the Allstate CT Page 11479 automobile policy, and is therefore entitled to underinsured benefits under Daybreak's CNA policy; and failing to find that although the plaintiff breached the consent to settle clause, CNA was not prejudiced by this breach since the plaintiff had already exhausted the one policy which was applicable at the time of the accident.
DEAN, J.